JUSTICE SHEEHY,
dissenting:
I dissent to the imposition of the death penalty in this case as I did in the companion case of State v. Lester Kills On Top, [241] Mont. [378], 787 P.2d 336, 355 (1990), upon the grounds that the death penalty is cruel and unusual punishment and so prohibited by the Eighth Amendment of the United States Constitution, the Due Process Clause of the Fourteenth Amendment to that Constitution and Art. II, sec. 22 of the Montana Constitution.
Montana is a “weighing state” in that the District Court, in determining whether to impose a death sentence, must find aggravating circumstances related to the death described in sec. 46-18-303, MCA, and weigh against any one or more of those aggravating circumstances the mitigating circumstances described in sec. 46-18-304, MCA. Even if no appeal is *110 taken by a defendant, the judgment of conviction and sentence of death are subject to automatic review by this Supreme Court under secs. 46-18-307, -308, -309, and -310, MCA. Particularly, in sec. 46-18-310, this Court is given the authority when a death sentence has been imposed by the District Court to determine “whether the evidence supports the judge’s finding of the existence or nonexistence of the aggravating and mitigating circumstances enumerated in sec. 46-18-303 and sec. 46-18-304.” There is no provision in our statutes giving this Court the authority to reweigh the evidence to inflict the death sentence as though this were the original sentencing court.
Under our state statutory system relating to death penalties, in the original trial in the District Court, the jury is given the function of determining from the facts whether a crime permitting the death penalty has been committed (the conviction phase). If the jury determines that such a crime has been committed, then it becomes the function of the district court judge to determine from the jury verdict whether an aggravating factor listed in the statute exists in the crime, and against that aggravating factor or factors, to weigh any mitigating evidence which would militate against the death penalty (the sentencing phase). It is only from these functions of the jury and the sentencing district court that this Court has any appellate authority or jurisdiction: it does not have authority or jurisdiction other than to review the sentence imposed by the District Court or to consider the conviction by way of appeal. For ease in handling either or both of the two appellate functions, sec. 46-18-308, MCA, allows this Court to consolidate the appeal from any judgment of conviction with the automatic review by the Supreme Court of the death sentence.
At foot in this case is the proper interpretation of the United States Supreme Court cases of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and a successor case, Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).
Enmund held that the death penalty may be imposed on a defendant who killed, attempted to kill or intended to kill the victim or that lethal force was used. Tison expanded that concept to allow the death sentence where the defendant was a major participator in the felony committed, combined with his reckless indifference to human life.
This case presents an anomaly in the two-pronged system,the jury as trier of the offense, and the judge as the sentencer. In the appeal phase of the case, we can uphold the judgment of conviction for the crime alleged if it is supported by substantial evidence in the cause. In the sentence appeal, however, this Court reviews a different function: the District *111 Court may impose the death penalty in this case only if the defendant killed, attempted to kill or intended to kill the victim or if he was a major participant in the felony with a reckless indifference to human life.
Thus, under the felony-murder rule, the required mental state of the defendant may be supplied for the conviction for murder because of the commission by the defendant of the accompanying crime. However, for the imposition of the death penalty, the mental state of the defendant who did not participate in the actual killing must be separately found, not in the felony-murder rule, but in a specific finding that he was a major participant, with reckless indifference to human life. Tison, supra. In a death penalty case, that element should appear beyond a reasonable doubt.
Vernon Kills On Top was not present when John Etchemendy was lolled. That killing took place when Diane Bull Coming and Lester Kails On Top drove off, apparently without telling Vernon Kills On Top or his companion what was up, and Diane Bull Coming and Lester Kills On Top went separately to consummate the foul deed. The only evidence of Vernon’s mental state as to whether he was recklessly indifferent to the death of the victim comes from an accomplice, Diane Bull Coming, and that particular point of evidence is uncorroborated.
Thus, that Vernon Kills On Top was guilty of felony-murder under the statutes, is one matter upon which we can agree, because his mental state is supplied in the commission of the felony-murder. Whether, however, his mental state qualifies for the death penalty under Enmund and Tison, is quite another matter. It depends solely on the evidence of Diane Bull Coming, a not very savory participant or witness in this matter at best.
The gist of Diane Bull Coming’s testimony on this point is that on two occasions Vernon Kills On Top agreed with Lester Kills On Top, a dominant personality, that Etchemendy had to die. On each occasion, however, Vernon counseled Lester “to wait.” That evidence is as amenable to a lack of mental state on the part of Vernon Kills On Top of a reckless indifference to human life, as the presence of such a mental state. Strongly bearing on this question is the fact that Diane and Lester drove off for the actual killing despite the counsel to wait of Vernon Kills On Top, and Diane and Lester proceeded at some distant place to end the life of Etchemendy.
There is a factor in the credibility of Diane Bull Coming that this Court’s majority have not met or attempted to explain. Diane was charged upon her arrest with the crime of aggravated kidnapping, for which a death penalty is possible, and with robbery. After 279 days in the Miles City jail (described as a basement jail) she entered into a plea bargain with the *112 State, whereby, in exchange for her testimony against Lester Kills On Top, Vernon Kills On Top and Doretta Four Bear, the charge of aggravated kidnapping against Diane was dropped. Diane pleaded guilty only to robbery, and was given a 40-year sentence, but as a non-dangerous offender, she is eligible for parole in about eight years. Because of that background, when she testified in Vernon’s case here her demeanor on the witness stand would be imperative for any trier of fact to judge of her credibility.
Moreover, when the majority speak of proportionality in comparing Vernon’s death sentence to other Montana cases, they overlook the complete lack of proportion in the sentence given Vernon, compared to the eight-year sentence given Diane, a fully-acting participant from beginning to end, including the actual killing of Etchemendy.
There are other factors in Diane’s testimony which shake me as to her credibility. She testified that Vernon and Lester stole the wallet from Etchemendy. The other woman in the automobile, Lavonne Quiroz, testified that it was Lester and Diane who stole the wallet and divided the proceeds, with Diane eventually giving a fifty dollar bill to Lester, a bill which he lost and Diane eventually got back. Lester Kills On Top testified that it was Diane herself who got the wallet from Etchemendy. Further, Diane pleaded guilty to robbery.
On another point respecting reckless indifference for human life, Diane Bull Coming testified that when Etchemendy was in the trunk of the car, Vernon mixed a beverage of beer and EverClear (EverClear is 180 proof alcohol) and attempted to force it down Etchemendy’s throat. Lavonne, however, testified that it was Diane who prepared the beverage and attempted to force the mixture into Etchemendy. Here again the testimony of Diane Bull Coming is uncorroborated.
The majority sets out a number of factors which they say corroborate the testimony of Diane Bull Coming. All that those factors corroborate, however, is that Lester was present for a felony-murder offense. The essential point that relates to his state of mind for the imposition of the death penalty, as to his reckless indifference to the life of Etchemendy, comes from Diane’s uncorroborated statements against which there is evidence otherwise, including the fact that it was Lester who placed a blanket over the body of Etchemendy when he was still alive and in the trunk.
I will not belabor the other reasons I oppose the death penalty in this case. They are the same as for Lester Kills on Top as set forth in my dissenting opinion there and which apply equally here. 787 P.2d at 355-359.
*113 I would uphold the conviction of Vernon Kills On Top on the basis of felony-murder rule and reverse the imposition of the death penalty.